IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STEPHEN DEREK REHBERG, | CASE NO. 1:25-cv-2032 |
| Plaintiff, | DISTRICT JUDGE |
| vs. | BENITA Y. PEARSON |
| COMMISSIONER OF SOCIAL SECURITY, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Defendant. | **REPORT & RECOMMENDATION** |

Plaintiff Stephen Derek Rehberg filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying disability insurance benefits and supplemental security income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court reverse the Commissioner's decision.

**Procedural history**

In December 2022, Rehberg filed applications for disability insurance benefits and supplemental security income, alleging a disability onset date of

February 27, 2021.[1] Tr. 215, 222. In his applications, Rehberg claimed that he was disabled due to cardio myopathy, sleep apnea, depression, and obesity. Tr. 259. The Social Security Administration denied Rehberg's applications and his motion for reconsideration. Tr. 95–96, 102–03. Rehberg then requested a hearing before an Administrative Law Judge (ALJ). Tr. 155.

In August 2024, an ALJ held a hearing, during which Rehberg and a vocational expert testified. Tr. 35–66. The next month, the ALJ issued a written decision finding that Rehberg was not disabled. Tr. 17–30. The ALJ's decision became final on July 31, 2025, when the Social Security Appeals Council declined further review. Tr. 1–3; *see* 20 C.F.R. § 404.981.

Rehberg filed this action on September 24, 2025. Doc. 1. He asserts the following assignments of error:

> 1. The ALJ's residual functional capacity finding is unsupported by substantial evidence. The ALJ failed to build an accurate and logical bridge from the evidence to the residual functional capacity finding. The ALJ failed to evaluate the medical opinions and prior administrative medical findings pursuant to the revised regulations.
>
> 2. The ALJ's residual functional capacity finding is unsupported by substantial evidence. The ALJ failed to clearly state her reasons for discounting Plaintiff's subjective complaints relating to shortness of breath and the need for additional breaks. The ALJ's

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

2

findings did not comply with the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p.

Doc. 7, at 1.

**Evidence**

*Personal and vocational evidence*

Rehberg was 38 years old on his alleged disability onset date. Tr. 29. He attended college for "a year or two" and works part-time in a nursing-home kitchen and hosting trivia games. Tr. 40–43.

*Relevant medical evidence*

In January 2021, Rehberg went to the emergency room after experiencing shortness of breath, dizziness, and left-arm numbness two hours after having received a flu vaccine. Tr. 452. He reported a history of heart failure, which, he said, triggered his anxiety about his symptoms. Tr. 452. Rehberg had a history of noncompliance with his prescribed cardiac medication. Tr. 452. On exam, he was anxious and obese and had no other abnormal findings. Tr. 455. Chest x-rays that day showed unchanged mild cardiomegaly (abnormal hear enlargement). Tr. 457. The impression was that Rehberg was anxious about his health. Tr. 458.

In March 2021, Rehberg had a counseling assessment for his anxiety. Tr. 361. He said that he had panic attacks "mostly while at work." Tr. 361. He also reported "[l]imitations" while walking "a long distance" and lifting. Tr. 366. The therapist diagnosed generalized anxiety disorder. Tr. 378.

3

In May 2022, Rehberg went to the emergency room for shortness of breath and a three-day spell of abdominal pain and diarrhea after eating "wings and pizza." Tr. 417. Chest x-rays showed decreased lung volumes with "perihilar subsegmental atelectasis" (partial lung collapse) "or minimal congestion." Tr. 430. The provider assessed shortness of breath and abdominal pain. Tr. 424.

In December 2022, Rehberg went to the emergency room after experiencing lightheadedness and dizziness at work "after moving boxes and heavy pans." Tr. 400. He also reported feeling short-of-breath and winded.  Tr. 400. On exam, Rehberg's pulmonary effort was normal and he was in no respiratory distress, with normal breath sounds and no wheezing. Tr. 402. Rehberg displayed a normal range of motion in his extremities, no weakness, and normal coordination. Tr. 403. The doctor assessed dyspnea (shortness of breath) on exertion. Tr. 405.

Later that month, Rehberg went to the emergency room for a runny nose, sore throat, and fatigue. Tr. 391. He denied chest pain or shortness of breath. Tr. 391. His exam findings were normal. Tr. 394. The provider assessed a viral infection. Tr. 395.

In July 2023, Rehberg saw Cameron Gachett, DO, for a consultative exam. Tr. 513–16. Rehberg reported a history of cardiomyopathy and listed the following symptoms: weakness, fatigue, sleep apnea, shortness of breath on exertion (walking less than one block), and occasional right-sided chest pain.

4

Tr. 513. On exam, his lungs were clear to auscultation and he had shortness of breath with mild to moderate activity. Tr. 515. He exhibited full strength and range of motion and a steady gait. Tr. 517–21. Rehberg had lumbar pain and normal joints. Tr. 515. He could rise from a seated position without assistance and had no difficulty getting up and down from the exam table. Tr. 515. He could perform tandem walking and hop on one foot. Tr. 515. Dr. Gachett diagnosed shortness of breath with activity, lumbar pain, and obesity. Tr. 516.

A few days later, Rehberg had a routine cardiology appointment. Tr. 929. He said that he "[a]lways" had breathing problems. Tr. 929. His listed diagnoses were benign hypertension, chronic systolic congestive heart failure, psoriasis, obesity, and obstructive sleep apnea. Tr. 918. Rehberg said he was doing better about consistently taking his medications. Tr. 920. He reported that while sleeping he removed his CPAP mask without realizing it. Tr. 920–21. The provider commented that Rehberg "remains short of breath but [has] no signs or symptoms or congestive heart failure." Tr. 931. Rehberg weighed 354 pounds. Tr. 931. The provider ordered a routine echocardiogram. Tr. 935.

In September 2023, Rehberg had sleep-study follow-up appointment at a pulmonologist's office. Tr. 893. Rehberg's "[m]ost recent sleep testing showed: severe obstructive sleep apnea … with sleep related hypoxia." Tr. 893. He had poor compliance with his "PAP" machine but improvement when he wore it. Tr. 893. On exam, Rehberg's pulmonary effort was normal, with no wheezing or respiratory distress. Tr. 895.

In November 2023, Rehberg visited his primary care office for heel pain that started two weeks before the appointment. Tr. 878. He said that at work he stood on his feet. Tr. 878. He described the pain as "sharp … with any weightbearing activity" and "located throughout his entire heel and posterior ankle" near his Achilles tendon. Tr. 880. The provider assessed Rehberg with right ankle pain; suggested he try Tylenol, stretching, ice, and heel cups, which were provided; and referred him to podiatry. Tr. 882.

A few days later Rehberg had a podiatry appointment. Tr. 863. On exam, Rehberg had "a prominence on the posterior aspect of his heel with a slight amount of erythema and edema present," which was "possibly significant for a retrocalcaneal bursitis." Tr. 867–68. He had tenderness to his Achilles tendon and reduced ankle flexion. Tr. 868. X-rays showed a large bone spur on the back of Rehberg's heel, a spur on the bottom of his heel, and Achilles tendon calcification. Tr. 868. The podiatrist referred Rehberg to physical therapy. Tr. 868.

Rehberg started physical therapy in late November, Tr. 852, and by late December his pain had improved, Tr. 794. He was then discharged from physical therapy due to his lack of follow-up. Tr. 797.

In January 2024, Rehberg followed up with his cardiologist. Tr. 707. The doctor remarked that Rehberg continued to be "dyspneic on exertion" but that his echocardiogram findings had improved to "low normal." Tr. 709. He weighed 359 pounds. Tr. 712. The doctor commented that Rehberg's dyspnea

on exertion was "likely secondary to his morbid obesity and deconditioning." Tr. 713. Rehberg was told to focus on diet and exercise. Tr. 713.

In February 2024, Rehberg followed up for his sleep apnea. Tr. 683. He reported improved compliance with his BiPAP machine. Tr. 686. He had been struggling with persistent respiratory infections. Tr. 686, 768. On exam, Rehberg had normal cardiovascular and pulmonary findings. Tr. 688.

In April 2024, Rehberg visited his primary care office for a blood pressure check-up. Tr. 555. He denied shortness of breath and back pain. Tr. 558. He reported paresthesia of his left thigh. Tr. 555.

At a May 2024 sleep follow-up, Rehberg said that he was benefitting from use of his BiPAP machine, but his compliance was described as "average-poor still improving." Tr. 641.

In July 2024, Rehberg's work supervisor wrote a letter on Rehberg's behalf stating:

> Due to [Rehberg's] medical issues we make the following accommodations: limited bending and stooping as this results in dizziness, frequent breaks when he is having difficulty breathing, and frequent bathroom breaks due to side effects of medication. These accommodations have been in place since he obtained employment at [the nursing-home kitchen].

Tr. 322.

7

*State agency opinions*[2]

In March 2023, Lynne Torello, MD, reviewed Rehberg's record and wrote that there was "insufficient evidence to make a determination about [Rehberg's] limitations and conditions" because Rehberg "failed to return forms." Tr. 92.

In August 2023, Venkatachala Sreenivas, MD, reviewed Rehberg's record. Tr. 109. Regarding Rehberg's physical residual functional capacity (RFC),[3] Dr. Sreenivas adopted "based on AR 98-4" the prior ALJ's RFC, limiting Rehberg to light work—lifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently; sitting and standing for six hours in an eight-hour workday; and walking for four hours in an eight-hour workday. Tr. 109. Rehberg could climb ramps and stairs, but not ladders,

---

[2]     When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

[3]     An RFC is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

ropes, or scaffolds. Tr. 109. He could occasionally stoop and crouch, but could not crawl. Tr. 109.

*Hearing testimony*

Rehberg, who was represented by counsel, testified at the telephonic administrative hearing held in August 2024. Rehberg said that he works part-time in the dietary department of a nursing home. Tr. 41. He works a five-hour shift twice a week. Tr. 42. Due to his medical conditions Rehberg takes extra breaks, which his boss permits. Tr. 42–43. Rehberg also hosts a trivia game at a bar once a week. Tr. 43–44.

When asked why he couldn't work full-time, Rehberg said that sometimes he has to bend over—he could ask for help, but doesn't—and bending over makes him lightheaded and dizzy. Tr. 46. At times he needs to sit down. Tr. 46–47. His prescribed medications cause him to frequently need to use the bathroom. Tr. 47.

When asked about his shortness of breath, Rehberg explained that he loses his breath when he stands for too long, walks for a long period, and pushes carts. Tr. 48. He estimated that he could be on his feet for a half-hour to an hour at a time, depending on the day. Tr. 48. He has no limitations sitting. Tr. 49. The most he lifts at work is about 30 pounds. Tr. 49.

The ALJ discussed with the vocational expert Rehberg's past work as a food server, bartender, and short-order cook. Tr. 57–58. The ALJ asked the vocational expert to determine whether a hypothetical individual with the

same age, education, and work experience as Rehberg could perform Rehberg's past work or any other work if the individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 58–59. The vocational expert answered that such an individual could perform Rehberg's past work as a short-order cook and the following, additional jobs—price marker, office helper, and mail clerk. Tr. 59–60.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2028.

2. The claimant has not engaged in substantial gainful activity since February 27, 2021, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: acute heart failure/cardiomyopathy; obstructive sleep apnea with sleep related hypoxia; obesity; right Achilles tendinitis (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. He could stand at least 6

10

hours during an 8-hour workday and could walk no more than 4 hours during an 8-hour workday. The claimant could sit up to six hours during an 8-hour workday. He could frequently climb ramps and stairs, but would be precluded from climbing ladders, ropes, and scaffolds. The claimant could occasionally stoop and crouch but would be precluded from crawling.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was … 38 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 27, 2021, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 20–30.

11

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4. What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5. Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work

> experience? If so, the claimant is not disabled.
> If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id.* "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id.* If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### Standard of review

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id.* at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). The Commissioner's "findings … as to any fact if supported by

13

substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

*The ALJ erred when evaluating the state agency reviewer's opinion*

*1. The ALJ didn't evaluate the supportability factor*

Rehberg argues that the ALJ erred because she didn't address the supportability factor when she evaluated state agency reviewer Dr. Sreenivas's opinion. Doc. 7, at 13.

The Commissioner is required to evaluate the persuasiveness of all medical opinions using the following factors: supportability; consistency; treatment relationship, including the length, frequency, purpose, and extent; specialization; and other factors. 20 C.F.R. §§ 416.920c(a), 416.920c(c)(1)–(5).

14

Supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(a). Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] … the more persuasive the medical opinions … will be." 20 C.F.R. § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion[] … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] … will be." 20 C.F.R. § 416.920c(c)(2). The Commissioner must explain the supportability and consistency factors when discussing a medical opinion. 20 C.F.R. § 416.920c(b)(2). "[A]n ALJ need not," however, "specifically use the terms 'supportability' or 'consistency' in his analysis." *Cormany v. Kijakazi*, No. 5:21-cv-933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022) (citing cases). The Commissioner is not required to discuss the remaining factors. *Id.* "A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Toennies v. Comm'r of Soc. Sec.*, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (internal quotation marks and citation omitted).

The ALJ evaluated Dr. Sreenivas's opinion as follows:

> Upon reconsideration, a state agency medical consultant opined that the claimant would be able to perform work at the light exertional level with never climbing ladders, ropes, or scaffolds or crawling, and occasionally stooping and crouching, and frequently climbing ramps and stairs. This was an adoption of the ALJ decision findings dated February 26, 2021, based on AR 98-4. (Exhibits B8A & B9A). This

> opinion is persuasive as it is consistent with and supported by the medical evidence of record. The claimant was able to continue to work two part-time jobs and stated he was able to lift up to 30 pounds at work. He also said he could carry his trivia hosting equipment in and out of the establishment where he worked once a week. (Hearing testimony).

Tr. 27.

The ALJ failed to discuss the supportability factor, which is reversible error. *See* 20 C.F.R. § 416.920c(b)(2) (the ALJ "must explain the supportability and consistency factors when discussing a medical opinion."); *see, e.g., Brenda T. v. Comm'r of Soc. Sec. Admin.*, No. 2:23-cv-2980, 2024 WL 3506947, at *10 (S.D. Ohio July 22, 2024) (finding that the ALJ committed reversible error when he failed to discuss the supportability of a medical opinion), *report and recommendation adopted*, 2024 WL 3677636 (S.D. Ohio Aug. 6, 2024); *Kopec v. Comm'r of Soc. Sec.*, No. 1:23-cv-680, 2023 WL 6958636, at *7 (N.D. Ohio Oct. 20, 2023) ("Simply put, the ALJ didn't comply with the regulations" when she failed to discuss the supportability factor, "which is grounds for reversal."); *John F. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-cv-260, 2023 WL 4759127, at *6 (S.D. Ohio July 26, 2023) ("[T]his Court agrees that the ALJ failed to follow the regulatory requirement to evaluate the consultants' opinions for supportability. The failure to comply with a legal requirement constitutes reversible error."); *Reed v. Comm'r of Soc. Sec.*, No. 3:20-cv-2611, 2021 WL 5908381, at *6 (N.D. Ohio Dec. 14, 2021) (the ALJ's failure to discuss the supportability factor was reversible error).

The Commissioner counters that the ALJ "explained that [Dr. Sreenivas's] determination was consistent with and supported by the medical evidence of record." Doc. 8, at 7. But simply stating that an opinion is "supported by the medical evidence of record," Tr. 27, does not amount to "explain[ing] how" an opinion is supported by the evidence, as the regulations require, 20 C.F.R. § 416.920c(b)(2). *See Goodman v. Soc. Sec. Admin.*, No. 1:22-cv-995, 2024 WL 623894, at *15 (N.D. Ohio Feb. 14, 2024) (the ALJ's statement that an opinion is "not supported" "fails to 'explain how' the ALJ 'considered the supportability...factor'")( citing 20 C.F.R. § 416.920c(b)(2)).

The Commissioner submits that the ALJ "also referenced the fact that Plaintiff continued to work two part-time jobs, stated he could lift up to 30 pounds, and could carry equipment at one of his part-time jobs." Doc. 8, at 7. But Dr. Sreenivas didn't cite these facts in support of her opinion. Tr. 108–09. These facts therefore don't go to the supportability factor; they go to the consistency factor. *See* 20 C.F.R. § 416.920c(c)(1),(2); *Goodman*, 2024 WL 623894, at *14 ("supportability" is the extent to which a medical source's own objective findings and supporting explanations substantiate or support the findings in the opinion").

Finally, the Commissioner argues that "[a]n ALJ need not include detailed treatment records in the paragraph evaluating a medical source's opinion where elsewhere in the decision the ALJ set forth those records." Doc. 8, at 8. But the Commissioner doesn't identify where else in the decision the

ALJ "set forth" the evidence she believed supported Dr. Sreenivas's opinion. The case the Commissioner relies on, *Hartzer v. Comm'r of Soc. Sec.*, No. 3:23-cv-1972, 2024 WL 3963540, at *8 (N.D. Ohio Aug. 28, 2024), *report and recommendation adopted*, 2024 WL 5054890 (N.D. Ohio Dec. 10, 2024), is inapposite. In *Hartzer*, the ALJ wrote that the state agency reviewer's opinion wasn't supported because the doctor didn't have access to a large portion of the record, and it wasn't consistent with the overall record. 2024 WL 5054890, at *6–8. In doing so, the ALJ summarized the inconsistent evidence—which the ALJ had earlier in the decision discussed. *Id*. at *7–8. Here, the ALJ didn't discuss the supportability factor at all and she didn't summarize any evidence that she discussed elsewhere in the decision that could be linked to the supportability factor. In fact, as discussed below, the only thing Dr. Sreenivas cited in support of her RFC assessment was the prior ALJ's RFC. Tr. 109.

The ALJ's failure to discuss the supportability factor is reversible error.[4]

### 2. The ALJ did not indicate how she applied AR 98-4

Rehberg also argues that the ALJ erred when she evaluated Dr. Sreenivas's opinion because the only thing Dr. Sreenivas cited in support of

---

[4]     Rehberg also challenges the ALJ's evaluation of Dr. Gachett's opinion. Doc. 7, at 15–16. Although the ALJ's discussion of this opinion is brief, the ALJ discussed the supportability and consistency factors and her explanation is sufficient. Tr. 28. Even if it wasn't, Rehberg asserts that Dr. Gachett's opinion didn't amount to a "medical opinion" as the regulations define that term. Doc. 7, at 16. But if that were true, the ALJ wasn't obligated to discuss Dr. Gachett's opinion at all.

her opinion was the prior ALJ's RFC, which Dr. Sreenivas apparently believed was binding based on AR 98-4. Doc. 7, at 12; Tr. 109.

Briefly: the Sixth Circuit used to treat an ALJ's decision as binding, absent new and material evidence, in a claimant's subsequent disability application, *see Drummond v. Comm'r of Soc.  Sec.*, 126 F.3d 837 (6th Cir. 1997), but then clarified that the prior ALJ's decision is binding only as to the time covering that prior claim, not a later period, *see Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). It took awhile for the Agency's Acquiescence Rulings to catch up with this change. *See* SSAR 24-1(6), 89 FR 92992, 2024 WL 5256889 (Nov. 25, 2024) (Agency's Notice that it was rescinding AR 98-4, which encapsulated the rule in *Drummond*, with AR 24-1, which articulated the rule in *Earley*—six years after *Earley* was decided). Meanwhile, when an ALJ cites the former AR 98-4 standard, doing so is not error so long as the ALJ applies the correct standard. *Dennis D. v. Comm'r of Soc. Sec.*, No. 23-3667, 2024 WL 1193662, at *4–5 (6th Cir. Mar. 20, 2024).

Here the ALJ cited the former AR 98-4 standard. Tr. 17. It's not clear whether she applied the correct standard because she didn't identify at the outset what standard she was applying. *Id.* At steps two and three the ALJ found that AR 98-4 didn't apply. Tr. 20, 23. But then when evaluating Rehberg's RFC, the ALJ wrote:

> Per the requirements of AR 98-4, the RFC findings from the prior decision dated February 26, 2021, and the current claim findings have been reviewed. There is new [b]ut not material evidence in the

> record. The residual functional capacity in the prior
> decision is being adopted.

Tr. 24. The ALJ didn't say one way or another whether she believed that she was bound by the prior ALJ's RFC. So the Court is unable to determine whether the ALJ erred. Compounding this problem is the fact that the ALJ adopted Dr. Sreenivas's opinion, which, in turn, adopted "based on AR 98-4" the prior ALJ's decision. Tr. 27, 109.

Rehberg also challenges the ALJ's evaluation of Rehberg's reports that he experiences shortness of breath and needs extra breaks. Doc. 7, at 19. On remand, the ALJ will have an opportunity to re-evaluate Rehberg's reports of symptoms and limitations.

**Conclusion**

For the reasons explained above, I recommend that the Court reverse the Commissioner's decision and remand for proceedings consistent with this opinion.

Dated: April 13, 2026

*/s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

20

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).